**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NORMAN GOLDSMITH,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 3:16-CV-952** |
| | : | |
| **v.** | : | **(Judge Mariani)** |
| | : | |
| **FRANKLIN COUNTY, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

**I.    Statement of Facts and of the Case**

This case, which comes before us for consideration of a motion to dismiss, (Doc. 15.), involves Eighth Amendment claims brought by an inmate formerly housed at the Franklin County Prison, Norman Goldsmith.   In his amended complaint Goldsmith names eleven individual and institutional defendants. (Doc. 11.)  These defendants include Franklin County; seven correctional staff at the prison, Correctional Officers Samples, Weaver, Shaeffer, Meckley, Mills, and Miller, as well as Correctional Lieutenant Snodgrass; and three nurses employed at the prison, Christina Bird, Alicia Mongiovi and Misty Butler.  (Id.)

With respect to these defendants, the pertinent facts alleged in Goldsmith's amended complaint can be simply stated:  On April 3, 2014, Norman Goldsmith was

incarcerated at the Franklin County Prison.  (Doc. 11, ¶20.)  Goldsmith remained

housed at this facility from April 4 through May 26, 2014.  (Id., ¶21.)  While

incarcerated at the prison Goldsmith was under the medical care of the defendants,

and was receiving an array of medications including Sertaline, Ultram, Naprosyn and

other.  (Id., ¶22.)  Despite this treatment, Goldsmith's medical condition was

deteriorating while in custody and he was experiencing increasingly severe

headaches. (Id., ¶23.) Goldsmith reported these medical complications to defendants

Bird, Butler and Mongiovi, the nurses on duty at the prison.  (Id., ¶24.)

On the evening of May 26, 2014, Goldsmith's medical problems culminated

with a medical crisis as he experienced a *grand mal* seizure in his cell.  (Id., ¶¶25-6.)

The medical defendants, Christina Bird, Alicia Mongiovi and Misty Butler,

responded to Goldsmith's cell, where it is alleged that they observed and knew that

Goldsmith was in the throes of a seizure.  (Id., ¶¶27-8.)  Indeed, according to

Goldsmith's complaint, the plaintiff, "had a serious medical condition that was so

obvious that a layperson would recognize the need for a doctor's attention, and the

need to provide immediate medical care."  (Id., ¶29.)

Despite recognizing what Goldsmith asserts was an obvious medical need, it

is alleged that these three nurses refused to provide any timely medical assistance to

Goldsmith.  (Id., ¶31.)  Instead of providing medical care to this inmate who was

2

experiencing a medical crisis, Goldsmith alleges that medical personnel contacted the institution's Correctional Emergency Response Team (CERT team) "to restrain and discipline" the inmate.  (Id., ¶32.)   This CERT team consisted of Correctional Officers Weaver, Shaeffer, Meckley, Mills, and Miller, as well as Correctional Lieutenant Snodgrass.  (Id., ¶34.)  The CERT team members were also assisted by another Correctional Officer, defendant Samples, who responded to the scene and assisted in restraining Goldsmith.  (Id., ¶¶27, 30.)  According to the complaint when the CERT team arrived they were instructed by the medical staff "to forcibly restrain" Goldsmith.  (Id., ¶33.)   The CERT team and Samples then are alleged to have followed this instruction and restrained Goldsmith.  In the course of this forcible restraint, it is alleged that the Correctional defendants used excessive force, causing this inmate who was experiencing a seizure to suffer additional, unwarranted injuries. (Id., ¶¶34-37.)

On these facts, Goldsmith lodged two Eighth Amendment claims against Nurse Butler, Nurse Bird, and Nurse Mongiovi.  First, according to Goldsmith, these medical personnel displayed deliberate indifference to his serious medical needs by refusing to render any form of medical care to him when he was suffering from this seizure, resulting in unnecessary and wanton infliction of pain and suffering.  (Id., ¶¶38, 51-2.)  In addition, Goldsmith leveled a second Eighth Amendment claim

3

against these nurses, alleging that the medical staff also violated Goldsmith's right to be free from cruel and unusual punishment by failing to intervene when the CERT used excessive force against him. (Id., ¶¶53-4.) We have addressed a motion to dismiss relating to these claims, and Goldsmith's failure to intervene claim against these defendants has been dismissed while his medical deliberate indifference claim has been permitted to proceed forward. (Doc. 22.)

In the instant motion to dismiss filed by Franklin County and the Correctional defendants, (Doc. 15.), we are asked to assess the legal viability of the remaining claims made in the complaint. With respect to the individual Correctional defendants, those claims include Eighth Amendment medical deliberate indifference and excessive force claims. (Doc. 11, ¶¶62-72.) As for Franklin County, Goldsmith has lodged a claim that the county is culpable under a municipal liability theory. (Id., ¶¶73-85.) The county, and these individual correctional defendants have now moved to dismiss these claims, arguing that, as pleaded, neither of these two Eighth Amendment allegations states a claim upon which relief may be granted, and that there is no basis for municipal agency liability in this case. (Doc. 15.) This motion to dismiss is fully briefed by the parties, (Docs. 17, 18 and 21.), and is, therefore, ripe for resolution.

4

For the reasons set forth below, it is recommended that the motion to dismiss be granted, in part, and denied, in part, as follows: The plaintiff's municipal liability claim against Franklin County should be dismissed. In addition, any official liability claims leveled against the individual defendants should be dismissed. Further, the medical deliberate indifference claim lodged against these correctional defendants should be dismissed, since the complaint alleges that the correctional staff restrained Goldsmith at the direction of medical personnel. However, the Eighth Amendment excessive force claim lodged against these correctional staff is not subject to dismissal on the pleadings alone. Therefore, the motion to dismiss this excessive force claim should be denied.

## II.    Discussion

### A.    Motion to Dismiss–Standard of Review

A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is

plausible on its face," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The facts alleged must be sufficient to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. 544, 555.  This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action.  <u>Id</u>. at 556.  Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting <u>Twombly</u>, 550 U.S. at 555).  Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.  <u>See Iqbal</u>, 556 U.S. at 678–79, 129 S.Ct. 1937; <u>Twombly</u>, 550 U.S. at 555–57, 127 S.Ct. 1955; <u>Burtch</u>, 662 F.3d at 220–21." <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 681 (3d Cir. 2012).  As the court of appeals has observed:  "The Supreme Court in <u>Twombly</u> set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' <u>Twombly</u>,

550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.'  Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' "  Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'  Id."  Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record.  Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.")  However, the court may not rely on other parts of the record in determining a motion to dismiss.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

> **B.     The Plaintiff Concedes That the Official and Municipal Liability Claims Made in the Case Should Be Dismissed**

At the outset, Goldsmith concedes that any official capacity damages claims leveled against the individual defendants should be dismissed, and agrees that Franklin County should be dismissed as a municipal defendant. (Doc. 18.) We agree, and recommend dismissal of these defendants and claims.

At the outset we note that, with respect to official capacity claims brought against individual defendants it is well settled that "both as a matter of statutory interpretation, and by virtue of the immunity conferred upon the states by the Eleventh Amendment, [the plaintiff] is forbidden from maintaining this damages action against state officials acting in their official capacity under § 1983.  See e.g., Quern v. Jordan, 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).  Of course [the plaintiff] remains free to pursue damages claims against these defendants in their individual, personal capacities."  Jones v. Hashagen, No. 4:09-CV-887, 2010 WL 128316, at *12 (M.D. Pa. Jan. 12, 2010), aff'd, 419 F. App'x 141 (3d Cir. 2011).

Likewise, a municipal liability claim requires an exacting showing, and Goldsmith correctly concedes that he cannot meet this standard of pleading and proof. On this score as we have noted in the past:

> Under Monell and its progeny, organizational entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability.  Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) ("Monell"), the Supreme Court held that an entity may be held liable under 42 U.S.C. § 1983 for a constitutional injury that directly resulted from the organization's policy, custom, or practice.  Id. at 695.  Accordingly, a Monell claim seeks to impose organizational liability for a constitutional injury that was causally connected to a policy, custom, or practice.  See id.; see also

9

> Carreno v. City of Newark, 834 F. Supp. 2d 217, 231 (D.N.J. 2011).
> "Under Monell, a[n entity] cannot be subjected to liability solely
> because injuries were inflicted by its agents or employees." Jiminez v.
> All American Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007).
> Instead, "it is when execution of a ... policy or custom, whether made by
> its lawmakers or by those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the ... entity is
> responsible under § 1983." Id. (quoting Monell, 436 U.S. at 694). It is,
> therefore, essential to a Monell claim that there be a "direct causal link
> between a ... policy or custom and the alleged constitutional
> deprivation" in order to establish liability. City of Canton v. Harris, 489
> U.S. 378, 385 (1989).

Smith v. Susquehanna Univ., No. 4:14-CV-116, 2015 WL 12791753, at *6 (M.D. Pa.
Mar. 4, 2015).

> Therefore:

> To sustain such a claim, therefore, a plaintiff must "identify a ... 'policy'
> or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs
> of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must
> be "so widespread as to have the force of law." Id. at 404; see also Beck
> v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an
> official proclamation or edict of a municipality, while a custom is a
> practice that is "so permanent and well settled as to virtually constitute
> law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir.
> 1990) (citations omitted). The plaintiff must further "allege that a
> 'policy or custom' of [the defendants] was the 'moving force' behind the
> [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d
> 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404).

Smith v. Susquehanna Univ., No. 4:14-CV-116, 2015 WL 12791753, at *7 (M.D. Pa.
Mar. 4, 2015).

Here we agree that the plaintiff has correctly concluded that his pleadings and

proof do not satisfy this exacting legal standard, and has properly conceded the

dismissal of this municipal liability claim.

    **C.**    **The Correctional Defendants Are Entitled to Dismissal of the Plaintiff's Eighth Amendment Medical Deliberate Indifference Claim But the Plaintiff's Excessive Force Claim Cannot be Dismissed on the Pleadings**

Turning to the remaining substantive Eighth Amendment claims leveled against these Correctional defendants in this case, the Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. See U.S. Const. amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828-29. Therefore, a prison official has a duty to protect inmates from serious risks of harm of which the prison official is aware. Id. at 833. However, in order to constitute "deliberate indifference" under the Eighth Amendment, the prison official who is alleged to have failed to protect an inmate must have had subjective knowledge of the risk of serious harm, and he must nevertheless have failed to respond reasonably to the known risk. Id. at 837-38. Thus, proof of a culpable subjective intent is a critical component of any Eighth Amendment claim in a prison setting. As the United States Court of Appeals for the Third Circuit explained, the basic requirements of a claim brought against a prison official under the Eighth Amendment are as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001)(quoting, Farmer v. Brennan, 511 U.S. 825, 834 (1994))

In this case, Goldsmith advances two Eighth Amendment claims against the Correctional staff defendants, each of which is governed by separate legal benchmarks. First, Goldsmith brings a constitutional claim premised on the defendants' alleged failure to provide him necessary medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical

treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g. Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's

constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment

claims that are based upon the level of professional care that an inmate received; <u>see,</u>

<u>e.g.</u>, <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>,

230 F. App'x 195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir.

2006); <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007);

<u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be

shown that significant medical services were provided to the inmate but the prisoner

is dissatisfied with the outcome of these services.  Instead, courts have defined the

precise burden which an inmate must sustain in order to advance an Eighth

Amendment claim premised on allegedly inadequate medical care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim,
> as it concerned [a care giver], because [the] allegations merely amounted
> to a disagreement over the proper course of his treatment and thus failed
> to allege a reckless disregard with respect to his . . . care.  The standard
> for cruel and unusual punishment under the Eighth Amendment,
> established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104
> (1976), and its progeny, has two prongs: 1) deliberate indifference by
> prison officials and 2) serious medical needs.  "It is well-settled that
> claims of negligence or medical malpractice, without some more
> culpable state of mind, do not constitute 'deliberate indifference.' "
> "Nor does mere disagreement as to the proper medical treatment support
> a claim of an eighth amendment violation." . . . . [The inmate] alleged no
> undue delay in receiving treatment and, as the district court noted, the
> evidence he presented established that he received timely care . . . .
> Although [an inmate plaintiff] may have preferred a different course of

14

treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

There is a necessary corollary to this principle, limiting the reach of Eighth Amendment medical deliberate indifference claims.  In a case such as this, where the inmate received on-going medical care, it is also well-established that non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993).  The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison.  Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.  Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.  Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a  prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

15

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004)

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who rely upon the guidance of medical staff in acting upon a medical matter may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007).

Given the well-pleaded facts alleged by Goldsmith in his complaint, we believe that this principle applies here and precludes any medical deliberate indifference claims against these correctional defendants.  According to the amended complaint when the CERT team arrived they were instructed by the medical staff "to forcibly restrain" Goldsmith.  (Doc. 11, ¶33.)  The CERT team and Samples then are alleged to have followed this instruction and restrained Goldsmith.  (Id., ¶¶34-37.)  Thus, Goldsmith alleges that non-medical correctional staff took this action at the direction and under the guidance of prison medical personnel.  Since, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands," it follows that non-

medical staff cannot be held culpable on a prison medical claim when they follow the instructions of medical personnel to restrain an inmate. <u>Spruill v. Gillis,</u> 372 F.3d 218, 236 (3d. Cir. 2004). Therefore, on these facts the "non-medical prison official[s] . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference", and this medical deliberate indifference claim should be dismissed. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d. Cir. 2004). Of course, Goldsmith may still pursue these medical claims against the medical defendants named in his complaint.

In contrast, Goldsmith's second Eighth Amendment claim against these defendants is not subject to dismissal on the pleadings. Goldsmith's second Eighth Amendment claim against these correctional defendants sounds in the nature of an Eighth Amendment excessive force claim. With respect to this particular Eighth Amendment claim, the contours of this constitutional right are well-settled, but often fact-specific. In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley[v. Albers</u>, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992). Thus, the keystone to analysis of an Eighth Amendment excessive

force claim often entails issues outside the pleadings, and involves an examination of questions of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including:  "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'"  Id. at 106.  When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham v. Connor, 490 U.S. 386, 396-7 (1989).  Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of

18

supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).  Given the very fact specific nature of this inquiry, excessive force claims often are not amenable to resolution on a motion to dismiss, where our scrutiny is limited to the well-pleaded facts in a complaint, but rather must await the full development of the factual record. See  Pew v. Harris, No. 3:12-CV-1984, 2016 WL 4487900, at *9 (M.D. Pa. July 25, 2016), report and recommendation adopted, No. 3:12-CV-1984, 2016 WL 4449639 (M.D. Pa. Aug. 24, 2016); Breeland v. Fisher, No. 3:12-CV-84, 2012 WL 5296488, at *6 (M.D. Pa. Oct. 4, 2012), report and recommendation adopted, No. 3:12-CV-84, 2012 WL 5298160 (M.D. Pa. Oct. 25, 2012).

So it is in this case.  While we acknowledge that cases have denied relief to inmates on facts similar to those alleged here, typically these cases have examined these claims on summary judgment where the Court may consider undisputed facts beyond the pleadings themselves.  In our view this excessive force claim remains a claim that cannot be resolved on the pleadings alone, but rather entails a factual inquiry which is beyond the scope of a motion to dismiss, where our consideration is limited to the pleadings themselves.  Further, with our review confined to the pleadings alone, we find that the plaintiff has sufficiently alleged an excessive force claim.  Therefore, the issue of whether the plaintiff can prove what he has pleaded

must await another date, and a different proceeding.  It cannot be resolved in favor

of these defendants on the pleadings alone.  Id.

### III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

motion to dismiss filed by the Correctional defendants and Franklin County (Doc.15.)

be GRANTED, in part, and  DENIED, in part, as follows:  The plaintiff's municipal

liability claim against Franklin County should be dismissed.  In addition, any official

liability claims leveled against the individual defendants should be dismissed.

Further, the medical deliberate indifference claim lodged against these Correctional

defendants should be dismissed, since the complaint alleges that the Correctional staff

restrained Goldsmith at the direction of medical personnel.  However, the Eighth

Amendment excessive force claim lodged against these Correctional staff is not

subject to dismissal on the pleadings alone.  Therefore, the motion to dismiss this

excessive force claim should be denied.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C.  §  636 (b)(1)(B)  or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the

proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of December 2016.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge